**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| LEON CORNELIUS WOODS, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. 08-0737-KD-C |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. 07-0047-KD |
| | : | |
| Respondent. | | |

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Proceedings, on Petitioner Woods' § 2255 Motion to Vacate (Doc. 460), filed December 17, 2008, Motion to Amend and Supplement (Doc. 468), filed February 23, 2009, and Motion to Compel (Doc. 472), filed March 23, 2009. A review of these motions, the Response of the United States (Doc. 470), the court record and a transcript of the sentencing hearing (Doc. 476)[1] has failed to reveal any reason to grant habeas relief in this action. In fact, Judge DuBose was most generous to Mr. Woods with regard to her sentencing decisions. Therefore, the motion for habeas relief should be

---

[1]     All references to the sentencing hearing transcript are to document 476 that was entered into the record on June 16, 2009.

**DENIED**.

**I.      Procedural and Factual Background.**

On August 16, 2007, a jury found Petitioner Woods guilty of conspiracy to possess with intent to distribute "crack cocaine," a violation of 21 U.S.C. § 846, and of (actual) possession of the aforementioned substance, a violation of 21 U.S.C. § 841(a)(1).  (Docs. 234, 234-2)  In regards to the conspiracy charge, the jury also found that the amount of crack cocaine attributable to Woods exceeded 5 grams, but was less than 50.  (*Id.*)

Pursuant to Rule 32, Federal Rules of Criminal Procedure, a sentencing hearing was scheduled for December 20, 2007 (Doc. 365).  Prior to the hearing, a Presentence Investigation Report was prepared and provided to counsel on October 26, 2007 (Doc. 234). Woods and his attorney were given an opportunity to review the Report and file objections. Ms. Jones, on behalf of her client, filed objections on November 16, 2007, (Doc. 355) and those objections are interpreted to express opposition to the findings by the Probation Officer that Woods should be held responsible for at least 1.5 kilograms of cocaine base and that his offense level should be calculated as a 38.  In addition, Ms. Jones asked Judge DuBose to grant a variance pursuant to 18 U.S.C. § 3553(a-e) based on her client's age, childhood deficiencies, and emotional and mental health.

As provided in Rule 32(i)(2), Judge DuBose took testimony for the purpose of determining the amount of cocaine involved in the conspiracy for which the defendant could be held responsible in order to calculate the base Offense Level under the Sentencing Guidelines.  The United States called five witnesses: Terrance Brown, Charles Banks, Raphael Banks, Jamichael Jenkins, and Officer Darryl Wilson.  Woods was afforded the opportunity to cross-examine each witness and to make arguments with regard to their testimony, including challenges to their credibility.

Once the hearing concluded, Judge DuBose determined that 300 grams of cocaine were attributable to the defendant, not 4.5 kilograms as was presented by the United States. (Sentencing Transcript, p. 38.)  This factual decision produced a  base offense level of 32.  Judge DuBose increased that level to 35 because she found that Woods' role in the offense was that of a supervisor.  (*Id*. at pp. 40-41; U.S.S.G. §3B1.1(b)) The combination of an offense level of 35 and a Criminal History Category of II produced a sentencing range of 188-235 months. (Sentencing Transcript, p. 42)

Judge DuBose next heard from Defendant's attorney, who made a plea for a downward departure, which was granted over the objection of the United States.  Mr. Woods was sentenced to separate 140-month terms in custody for both (conspiracy and actual possession) charges and further,

3

that the sentences be served concurrently.  (Doc. 388; Sentencing

Transcript, p. 47.)  Therefore, since Woods was sentenced to concurrent

sentences of 140 months, the  downward departure from the calculated

range was 48-95 months.  (*Id*.)

Within the time period for filing a notice of appeal, Woods and his

attorney opted instead to file a Notice of Non-Appeal (Doc. 417) on

December 28, 2007, in accordance with Local Rule 83.8(b)(1).[2]  The

paragraph immediately above Woods' signature reads as follows:

> I have been advised by the Court and by my attorney of my
> right to appeal my conviction and sentence.  I have consulted
> with my attorney, who has explained the advantages and
> disadvantages of taking an appeal.  I have had sufficient time
> to consider my options and require no further explanation.
> After consideration, *it is my desire to inform the Court that I
> do not wish to take an appeal*.

(Doc. 417, p. 1 (emphasis added))  Ms. Jones, for her part, signed beneath a

paragraph that states:

> I affirm that, as counsel for Defendant, I have fully advised
> my client of the advantages and disadvantages of an appeal,
> given the facts and circumstances of this case, its procedural
> history, and the sentence imposed.  I have had sufficient time
> to consult with my client to determine whether my client's
> decision is knowing and voluntary.  It is my opinion that my
> client's decision to take no appeal is both knowing and
> voluntary.

---

[2]      Woods signed the notice on December 27, 2007, and Ms. Jones signed it a
day later, December 28th.  (*Id*.; Doc. 417, p. 1)  The document was filed on December 28,
2007, and then docketed on May 21, 2008.   (Doc. 417.)

(*Id.*)  Consistent with this notice, Woods did not appeal his conviction or sentence.

On December 17, 2008, Woods filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 460), along with a supporting brief (Doc 461).[3]  Considering these documents together, it is decided that he raised only one ground for relief, that his Sixth Amendment right to effective assistance of counsel has been denied because: (1) his attorney failed to object to Judge DuBose's determination that the drug quantity relevant for sentencing purposes was 300 grams when the jury had specifically decided that only 5-50 grams where involved; and (2) that his attorney failed to follow his request that she file a direct appeal.

Before he obtained a ruling on the pending motion, Woods filed a motion for leave to amend and supplement the original motion on February 23, 2009 (Doc. 468).  This motion contains new grounds for asserting that Woods' sentence should be vacated.  The new grounds for relief, argued to relate back to the original motion pursuant to Rule 15(c), Federal Rules of Civil Procedure, are:

(1) Ms. Jones also rendered ineffective assistance because she (a) failed to convince Judge DuBose that her role-in-the-offense finding was

---

[3]     The motion was actually docketed on December 29, 2008, but was placed into the prison mailing system on December 17, 2009.

erroneous, (b) failed to establish that the evidence presented during the evidentiary hearing was insufficient to establish a drug quantity of 300 grams; (c) failed to establish that the judge's decision as to drug quantity was inappropriate given the finding of the jury; and (d) inappropriately counseled Woods to "involuntarily, unknowingly, and unintelligently waive his right to pursue an appeal;"

(2)  The judge-made decision that Woods was responsible for 300 grams of cocaine base involved in the conspiracy violated his Sixth Amendment right to a jury trial and his Fourteenth Amendment right to due process;

(3)  The evidence was insufficient at sentencing to establish a drug quantity of 300 grams; and

(4)  The two concurrent sentences of 140 months are unconstitutional because they "are based on inaccurate and invalid information and testimony."[4]

## II.   Discussion.

### A.   Statute of Limitations

28 U.S.C. § 2255 contains a 1-year statute of limitations:

---

[4]     The undersigned observes that, in deference to his status as a *pro se* prisoner litigant, Woods' petitions are entitled to a liberal construction.  *Gomez-Diaz v. United States*, 433 F.3d 788, 791 (11th Cir. 2005).

> (f) A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –
>
> > (1) the date on which the judgment of conviction becomes final; ....

28 U.S.C. § 2255(f)(1).  In this case, where no direct appeal was filed, the judgment of conviction became final when the time for filing a direct appeal expired.  *Atkins v. United States*, 204 F.3d 1086, 1089, n. 1 (11th Cir. 2000); *see also Ramirez v. United States*, 146 Fed.Appx. 325 (11th Cir. 2005) (unpublished). Since the judgment was entered on January 11, 2008 (Doc. 388), time for filing a notice of an appeal expired on January 25, 2008, and the one-year period for filing a § 2255 motion expired on January 26, 2009.

The expiration date of January 26, 2009 has no limiting impact on the original petition for habeas relief filed on December 17, 2008, but would  bar new grounds for relief in the amendment since it was filed on February 23, 2009,[5] more than one year after Woods' conviction became final.  *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000) (untimely new claims in an amended  § 2255 motion are barred unless they relate back to the timely filed motion).  Therefore, it is necessary to determine if the "new" grounds for relief contained in the second motion

---

[5]     This is the date it was placed in the prison mailing system.  (Doc. 468, p. 14.)

7

relate back to the original filing as represented by the petitioner.

### B.     Relation-back Doctrine

The proceedings in a habeas action filed under § 2255 are governed by a discrete set of rules, but where necessary, the Court may apply the Federal Rules of Civil Procedure.  *See* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 12 ("The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."); Rule 81(a)(4), Federal Rules of Civil Procedure ("These rules apply to proceeding for habeas corpus ... to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing Section ... 2255 Cases; and (B) has previously conformed to the practice in civil actions."); and 28 U.S.C. § 2242 ("[An application for a writ of habeas corpus] may be amended or supplemented as provided in the rules of procedure applicable to civil actions.")

"When a petitioner files a timely § 2255 motion, and then later files an untimely amended or supplemental motion that raises additional claims, the untimely claims are barred by the statute of limitations unless they relate back to the original motion under Federal Rule of Civil Procedure 15(c).  A claim relates back if it asserts a claim or defense that arose out of the

8

conduct, transaction, or occurrence set out--or attempted to be set out– in the original pleading." *Espinosa v. United States*, 2009 WL 1741562, *1 (11th Cir. 2009) (unpublished) (internal citations and quotation marks omitted); *see also Davenport v. United States*, 217 F.3d at 1344 ("[F]or an untimely § 2255 claim to 'relate back' under Rule 15(c), the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings."); *United States v. Pittman*, 209 F.3d 314 (4th Cir.2000) (same); *United States v. Duffus*, 174 F.3d 333 (3d Cir.), *cert. denied*, 528 U.S. 866, 120 S.Ct. 163, 145 L.Ed.2d 138 (1999) (same); *United States v. Craycraft*, 167 F.3d 451 (8th Cir. 1999) (same).  Thus, the claims presented in an amended § 2255 motion relate back to the original motion only if both motions "state claims that are tied to a common core of operative facts."  *Mayle v. Felix*, 545 U.S. 644, 661-62, 125 S.Ct. 2562, 2573-74 (2005).  In other words, claims must arise from the same set of facts and may not come from separate conduct or occurrences in both time and type.  *Davenport*, 217 F.3d at 1344.  The utility of amended motions is to "correct technical deficiencies or expand facts alleged in the original pleading," but should not be used to present "an entirely different transaction."  *Dean v. United States*, 278 F.3d 1218, 1221 (11th Cir. 2002).

Woods' original § 2255 motion contains the sole argument that he

was denied the effective assistance of counsel in violation of the Sixth

Amendment to the United States Constitution.  As bases for this claim, he

submits that his attorney failed to file an appeal at his request (Doc. 460, p.

4; Doc. 461, pp. 2-3) and further that she failed to object during the

sentencing hearing to a finding by Judge DuBose that he was responsible

for 300 grams of cocaine rather than the 5-50 grams range determined by

the jury.  (Doc. 460, p. 5).  The Court's review of the claims raised in the

motion to amend reveals that they are untimely, do not relate back to the

claims in the original motion, and are therefore barred from consideration

by the statute of limitations.

### 1.    Amended Ineffective Assistance of Counsel Claim

Unlike his original claim that Ms. Jones simply failed to file an

appeal as he requested, Woods claims in his amended motion that Ms. Jones

counseled him to waive his right to file a direct appeal.  Specifically,

Woods alleges that her discussion with him lead to an involuntary,

unknowing, and unintelligent waiver of his right to an appeal.  She

accomplished this task, according to Woods, by convincing him that he

would risk getting a more severe sentence, i.e.,  more time in prison, if he

filed an appeal.  (Doc. 468, p. 6). [6]

---

[6]    Within his amended motion, he identifies those issues he wanted raised on appeal:
(1) the erroneous enhancement for his role in the offense; (2) the insufficiency of the evidence to

While it is true that both claims lament the lost opportunity for Woods to file a direct appeal, that is where all similarity ends.  Importantly, the claims arise from a different set of facts as to time and type.  It is alleged in the first § 2255 motion that Ms. Jones either failed or refused to file an appeal prior to the filing deadline, a claim of ineffective assistance that became viable on January 25, 2008, ten days after the judgment was entered.  The more recent claim that Ms. Jones wrongfully convinced the defendant not to file an appeal, however, arose approximately twenty-eight days earlier, on December 28, 2007, when the Notice of Non-Appeal was filed (Doc. 417).  This filing clearly reveals that client and attorney had discussed the need for an appeal and decided eight days after the sentencing hearing that an appeal would not be filed.  Therefore, his ignored request that Ms. Jones file an appeal must have been the result of a change of mind that occurred between December 28, 2007 and January 25, 2008.

In addition, the conduct alleged in the amended motion is much different from that stated in the original motion.  In the first, Ms. Jones is arguably ineffective for failing to file a timely appeal pursuant to her client's request.  In the second and untimely motion, the allegation is that

support the drug quantity finding; and (3) the trial judge's refusal to follow the decision of the jury as to drug quantity for purposes of sentencing.

Woods waived his right to appeal based on his interaction with Ms. Jones that took place for the very purpose of discussing his options with respect to his right to an appeal.  As to the first (and timely filed) claim, it would be necessary for Woods to establish that he made his desire to file an appeal known to Ms. Jones and that she failed to follow his instructions.  In the amended claim, he admits that Ms. Jones discussed his appellate rights, but claims that the discussion lead to an involuntary waiver of those rights.

This change in approach is not considered to be merely an effort to correct technical deficiencies or expand facts alleged in the original pleading, but is more readily characterized as an *entirely different* transaction.  It does not, therefore, relate back to the original motion.

**2.     Violation of Defendant's Sixth Amendment Right to a Jury Trial and Fourteenth Amendment Right to Due Process of Law**

The amended motion raises, as an independent claim, the same argument Woods presented in his original motion that his attorney was ineffective because she failed to prevent the trial judge from using a drug quantitiy in excess of that found by the jury in reaching an appropriate sentence.  The more recent claim is different, however, in that it is independent of the actions of counsel, instead being an isolated assertion that the trial judge committed constitutional error in sentencing.

As such, it presents a new theory upon which habeas relief could be

granted, not just a basis for finding that counsel's performance during the sentencing hearing was ineffective, and therefore does not relate back to the original motion. This independent claim is thus untimely and barred by the statute of limitations. The crux of this issue– the supposed ineffectiveness of Woods' counsel– will be analyzed necessarily, however, since it forms the basis of a timely claim.

### 3.      *Insufficiency of the Evidence*

The third claim in the amended motion is also a new claim. Woods asserts that the evidence presented at the sentencing hearing was insufficient to establish a drug quantity of 300 grams, especially in light of the jury's decision that Woods was responsible for only 5 to 50 grams. The claim in Woods' original motion was that Judge DuBose was somehow improper in deviating from this jury finding, but this new claim instead targets the supposed dearth of the evidence on which Judge DuBose relied– a different version of a common theme, perhaps, but one clearly relying on different facts. This crucial distinction marks this new claim as one not specifically related to the original ineffective assistance of counsel claim, making it an untimely, and therefore barred, independent claim.

### 4.      Sentence is Based on Inaccurate and Invalid Information and Testimony in Violation of the Due Process Clause of the Fourteenth Amendment

For the first time, Woods attacks the character of the evidence presented to Judge DuBose during the sentencing hearing in his amended motion. His position is that some evidence was "inaccurate, false, and invalid." (Doc. 468, p. 10). This information is clearly not presented to clarify a previous claim or correct errors contained in the previous motion, but rather to insert an argument barred by the statute of limitations. Therefore, it does not relate back to the original motion and is time-barred.

The remainder of this Report, then, will necessarily restrict its focus on Woods' only timely-filed claim: that he was deprived of his Sixth Amendment right to effective assistance of counsel both because Ms. Jones failed to file an appeal despite his direct requests, and because Ms. Jones failed to object to Judge DuBose's determination that he was responsible for distributing 300, not the jury-recommended 5 to 50, grams of cocaine.

### C.    Standards of Law

#### 1.    *Habeas Standard*

It is initially noteworthy that, as this Court has previously stated:

> Habeas relief is an extraordinary remedy which 'may not do service for a direct appeal.' *United States v. Frady*, 456 U.S. 152, 165 (1982); *Lynn v. U.S.*, 365 F.3d 1225, 1232 (11th Cir. 2004). A defendant who has waived or exhausted his right to appeal is presumed to stand 'fairly and finally convicted.' *Frady*, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. *Addonizio v. United States*, 442 U.S. 178, 185 (1979).

*Carstarphen v. United States*, 2008 WL 4369010 (S.D.Ala. Sept. 25, 2008).

### 2.    *28 U.S.C. § 2255 Motions*

It is also important to note that all § 2255 proceedings follow a similar initial path.  The relevant portion of § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

*Id*.  "As written, § 2255 clearly provides a statutory means by which an individual under federal sentence can obtain federal habeas corpus review of the sentence imposed." *United States v. Jordan*, 915 F.2d 622, 625 (11ᵗʰ Cir. 1990).  Unless based on non-constitutional or non-jurisdictional grounds, cognizable claims under § 2255 must present exceptional circumstances for their justification, usually by alleging "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962).

Regarding Woods' bipartite ineffective assistance of counsel claim, the Eleventh Circuit requires that a defendant "show (1) that [his] counsel's assistance fell below an objective standard of reasonableness; and (2) that

the deficient performance prejudiced the defense such that it deprived the defendant of a fair trial." *Chateloin v. Singletary*, 89 F.3d 749, 752 (11th Cir. 1996), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987). *Accord United States v. Butcher*, 368 F.3d 1290, 1293-94 (11th Cir. 2004). When such claims are raised, "a petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions.'" *Mahone v. United States*, 2007 WL 604796, *2 (S.D.Ala.) (quoting *Hagins v. United States*, 267 F.3d 1202, 1204-5 (11th Cir. 2001)). In order to overcome this presumption and establish counsel's deficient performance, the petitioner is required to show "that counsel's performance is 'objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases,'" while prejudice "requires a showing of 'reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently.'" *Mahone*, *supra*, at *2 (citing *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990)). Furthermore, the determination of an attorney's performance must be evaluated from that attorney's perspective at the time of the alleged deficiencies. *Strickland*, 466 U.S. at 689. Finally, because the undersigned agrees that Ms. Jones is a seasoned and able advocate, it is worth noting that "[t]he presumption of reasonableness [of performance] is even stronger

16

when we are reviewing . . . an experienced trial counsel." *Callahan v.*

*Campbell*, 427 F.3d 897, 933 (11th Cir.), *cert. denied sub nom.*, 127 S.Ct.

427 (2006).

>        **D.      Failure to File Appeal**

Regarding the failure to file an appeal, Woods claims that he

"expressly advised his attorney that he was dissatisfied with the sentencing

proceeding and that he specifically wanted to have an appeal filed on his

sentence," but that "his sentencing attorney failed to file a notice of appeal

on his behalf." (Doc. 461, p. 2-3.)

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court

provided a crucial bridge from the more general language from *Strickland*,

above, and the specific situation confronting the undersigned– ineffective

assistance of counsel claims involving a failure to file an appeal.  There, the

Court stated, after going through the familiar *Strickland* standards: "Today

we hold that this test applies to claims, like respondent's, that counsel was

constitutionally ineffective for failing to file a notice of appeal."  *Id*. at 477.

The Court continued:

> We have long held that a lawyer who disregards specific
> instructions from the defendant to file a notice of appeal acts
> in a manner that is professionally unreasonable.  This is so
> because a defendant who instructs counsel to initiate an
> appeal reasonably relies upon counsel to file the necessary
> notice.  Counsel's failure to do so cannot be considered a
> strategic decision; filing a notice of appeal is a purely

> ministerial task, and the failure to file reflects inattention to
> the defendant's wishes.  At the other end of the spectrum, a
> defendant who explicitly tells his attorney *not* to file an appeal
> plainly cannot later complain that, by following his
> instructions, his counsel performed deficiently.

*Id*. (internal citations and quotation marks omitted) (emphasis in original).

Regarding counsel's duty to consult with a given defendant about whether

he would like to file an appeal, the Court said: "We cannot say, as a

*constitutional* matter, that in every case counsel's failure to consult with the

defendant about an appeal is necessarily unreasonable, and therefore

deficient," explaining that "[s]uch a holding would be inconsistent with

both our decision in *Strickland* and common sense."  *Id*. at 479 (internal

citations and quotation marks omitted) (emphasis in original).  Although in

the situation at bar, it is clear that Ms. Jones indeed consulted with Woods

about the desirability of filing an appeal, the Court in *Roe* provided a clear

holding whose application greatly aides the resolution of ineffective

assistance claims involving a failure to appeal:

> We . . . hold that counsel has a constitutionally[-]imposed
> duty to consult with the defendant about an appeal when there
> is reason to think either (1) that a rational defendant would
> want to appeal (for example, because there are nonfrivolous
> grounds for appeal), or (2) that this particular defendant
> reasonably demonstrated to counsel that he was interested in
> appealing.  In making this determination, courts must take
> into account all the information counsel knew or should have
> known.  Although not determinative, a highly relevant factor
> in this inquiry will be whether the conviction follows a trial or
> a guilty plea, both because a guilty plea reduces the scope of

18

potentially[-]appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.  Even in cases where the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.  Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id*. at 480 (internal citations and quotation marks omitted).

As the *Roe* Court recognized, "[t]he second part of the *Strickland* test requires the defendant to show prejudice from counsel's deficient performance."  *Id*. at 481.  Explaining that "the right to the effective assistance of counsel is recognized not for its own sake, but [instead for] the effect it has on the ability of the accused to receive a fair trial," the *Roe* Court stated that "[i]n such circumstances, whether we require the defendant to show actual prejudice– a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different– or whether we instead presume prejudice turns on the magnitude of the deprivation of the right to effective assistance of counsel." *Id*. at 482 (citing *United States v. Cronic*, 466 U.S. 648, 649-50 (1988); *Strickland*, 466 U.S. at 694).

Finally, the *Roe* Court concluded by holding that "to show prejudice in these circumstances, a defendant must demonstrate that there is a

19

reasonably probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484.  The Court cautioned that "[t]o prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal," but that "such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id*. at 486.

With these standards in mind, the undersigned now turns to Woods' claim that he "expressly advised his attorney that he was dissatisfied with the sentencing proceeding and that he . . . wanted to have an appeal filed," believing that the "guideline enhancement for 300 grams or more of crack cocaine, when the jury [only] found [him] guilty of 50 grams or less" should not have come to bear on his situation.  (Doc. 461, p. 2.)  This discrepancy, Woods contends, was not the product of due process of law, and is therefore unconstitutional.  After Ms. Jones allegedly failed to file a notice of appeal, Woods contends that she effectively "abandoned" her client.  (*Id*. at 6.)

In his amended petition, though, Woods argues that Ms. Jones, "unfortunately misunderstood" him regarding his desire to appeal.  (Doc. 468, ¶ 3.)  As part of this seemingly contradictory assertion, Woods contends later in the document that Ms. Jones "wrongly convinced [him]

that he could get more time if he appealed," advice which caused Woods to "involuntarily, unknowingly, and unintelligently waive his right to pursue an appeal." (*Id.* at 6.)

These statements combine to support Ms. Jones' written statement that she did indeed have a conference with Woods about whether to file an appeal– and that Woods decided that not doing so was in his best interest. It is also noteworthy that Judge Dubose directly informed Woods of his right to appeal during the sentencing hearing and explained that if he did not wish to appeal, he should file a notice of non-appeal. (Sentencing Transcript, p. 50.)

In *Roe*, *supra*, the Court mentioned that "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Roe*, 528 U.S. at 477 (emphasis in original). This is clearly the case regarding the situation before the undersigned, as Woods clearly told Mrs. Jones not to file an appeal; as already mentioned, this request has been memorialized in writing as the Notice of Non Appeal. Nevertheless, the Supreme Court provided additional support for the undersigned's position when it stated that when counsel has consulted with the defendant about an appeal, he or she "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.*

21

at 478.  When Woods claims that Mrs. Jones "wrongly convinced him" not to appeal, he is explicitly admitting that she consulted with him about that process.  Importantly, the *Flores-Ortega* Court specifically defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  *Id*.  It simply cannot be said, then, that Ms. Jones' performance was professionally unreasonable, as Woods both fails to make any allegation that he expressly directed her to file an appeal on his behalf *and* signed the notice of non-appeal before his attorney.

Other district courts provide examples of jurists reaching similar conclusions.  *See Logan v. United States*, 2007 WL 2220510, *3 (S.D.Tex. 2007) (petitioner's claim that his counsel did not inquire as to his desire to appeal undermined by his signature on a notice of non-appeal, which was taken as a clear indication of petitioner's lack of intent to appeal); *Flores-Diaz v. United States*, 516 F.Supp.2d 818 (S.D.Tex. 2006) (defendant filed a notice of non-appeal, so defense counsel was not held at fault for not filing a notice of appeal); *Urbina-Espinoza v. United States*, 2006 WL 2981189, *1 (S.D.Tex. 2006) (claim of ineffective assistance of counsel held "meritless" after petitioner executed notice of non-appeal, which itself was held to be an express reflection of Petitioner's informed decision to forego a direct appeal); *Cezares-Sanchez v. United States*, 2006 WL

22

2238546, * 2 (S.D.Tex. 2006) (petitioner confirmed that his decision to eschew an appeal was an informed one by signing a notice of non-appeal).

Based on the record, then, it is clear (1)  that Judge Dubose explained to Woods his right to appeal at the sentencing hearing, (2) that Woods entered a notice of *non*-appeal after consulting with counsel, and (3) that consistent with his filing a notice of non-appeal, Woods did not file an appeal. As discussed earlier, it is also clear from the record that Woods received a favorable sentence under the circumstances.  Judge DuBose ordered a downward departure from his sentencing guideline range and imposed two 140-month terms to run concurrently.  All of these factors combine to overcome Woods' contention that he received ineffective assistance of counsel as a result of Ms. Jones' failure to file an appeal.

### E.    Amount of Crack Cocaine Attributable to Woods

As for the allegation that Ms. Jones failed to object to the amount of crack cocaine for which Judge Dubose found Woods responsible, it is readily apparent from the record that Ms. Jones made the very objections to the Pre-Sentencing Report that Woods now claims she left unaddressed. (Doc. 355 (indicating Ms. Jones' challenges to the pre-sentence investigation report requesting a sentence variance).)  Thus, Ms. Jones acted in the very manner now advocated by the Petitioner.

Furthermore, at the sentencing hearing, the Court initially noted that

Ms. Jones "has filed [an] objection to the calculation to the base offense and to the facts that are relied on in the PSI for that calculation." (Sentencing Trancript, p. 3.) Later, Ms. Jones asked the Court to give considerable weight to the jury finding (of Woods' involvement in trafficking 50, not 300, grams of crack cocaine) "even though [she] kn[e]w that [it] is not controlling in this circuit," then posing the rhetorical inquiry: "How many times are [the prosecutors] going to get to change the quantity to get to where they want to be to lock him up?" (*Id.* at 3, 40-41.)

As support for Ms. Jones' concession during the sentencing hearing, it is worth noting that Judge Dubose's finding that Woods was responsible for the distribution of a substantially larger quantity of crack cocaine than that which the jury recommended was fully in keeping with established Eleventh-Circuit precedent. In *United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002), *cert. denied sub nom.*, 538 U.S. 909 (2003), after noting that 21 U.S.C. § 841(b)(1)(C) "provides a statutory penalty range applicable to all drug offenses involving the controlled substances listed on schedules I or II without regard to drug quantity," the Court stated:

> [I]n the context of federal drug cases, drug type and quantity do not have to be charged in the indictment or submitted to the jury for proof beyond a reasonable doubt, except when the finding of drug type or quantity causes the sentence actually imposed upon the defendant to rise above the prescribed statutory maximum.

24

*Id*. at 1100 (internal citations and quotations omitted).  21 U.S.C. §

841(b)(1)(C) provides that "[i]n the case of a controlled substance in

schedule I or II . . . [a person in possession thereof] shall be sentenced to a

term of imprisonment of not more than 20 years . . . ."  Judge Dubose's

finding during the sentencing hearing, then, that Woods was responsible for

the distribution of 300, instead of 5 to 50, grams of crack cocaine was fully

within her duties as the sentencing judge, as Woods' sentence (140 months)

is substantially less than the 20-year maximum prescribed by §

841(b)(1)(C).  The fact that Ms. Jones' objections where not successful due

to binding precedent in the Eleventh Circuit does not detract from her able

and dedicated service.

Later, after Judge Dubose found that Woods was involved as a

supervisor "in his own individual conspiracy," Ms. Jones again objected,

noting that such a finding would be the government's burden of proof and

that "they have put nothing on today, by way of testimony, to establish that

[Woods] was a supervisor."  (*Id*. at 41-42.)  Finally, Ms. Jones asked for a

variance under § 3553 "due to the circumstances of [Woods'] life and his

childhood," which she described as "brutal" after recounting sordid details

involving his mother's drug addiction.  (*Id*. at 44-45.)  These efforts make

the undersigned's recommendation that the current petition be denied rather

simple, as it is clear that Ms. Jones' performance did not fall below an

objective standard of reasonableness– and that even if her performance was somehow lacking, such deficiency wholly failed to reach the level of inadequacy contemplated by *Strickland*, *supra*. *See, e.g., U.S. v. Cotney*, 2008 WL 5225853, *4 (M.D.Ala. Dec. 12, 2008) (using the *Strickland* standard when holding that petitioner failed to demonstrate deficient performance of counsel or any resulting prejudice).

Based on the ample evidence present in the record that Ms. Jones' performance in representing Woods was clearly adequate under the Constitution, the undersigned sees no possible basis on which to find a Sixth Amendment violation.  Therefore, the undersigned sees no path for the resolution of Woods' motion other that to recommend that the same be **DENIED**.

### F.    Woods' Request for an Evidentiary Hearing

A sentencing court must order a hearing to determine the issues and findings of fact "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief ...."  28 U.S.C. § 2255(b).  Woods "is entitled to an evidentiary hearing on [his] claim of ineffective assistance of counsel if [he] alleges facts which, if proven, would entitle [him] to relief."  *Ramirez v. United States*, 260 Fed. Appx. 185, 187 (11th Cir. 2007) (*citing Smith v. Singletary*, 170 F.3d 1051, 1053

(11th Cir. 1999).[7]  "A district court, however, need not conduct an

evidentiary hearing if it can be conclusively determined from the record that

there was no denial of effective assistance of counsel." (*Id*.)

The factual allegations presented by Woods are contained in three

pleadings; the original motion to vacate, set aside or correct sentence with

brief filed December 29, 2008 (Docs. 460 & 461) and his motion to amend

and supplement the original motion filed February 26, 2009 (Doc. 468).

The relevant factual allegations are contained in the amended motion:

> 5.  Defendant Woods expressly advised his attorney that he
> was dissatisfied with the sentencing proceeding and that he
> specifically wanted to have an appeal filed on his sentence[.]
> [H]e believed (and voiced to counsel) that the factual
> finding[s] which resulted in his guideline enhancement for
> 300 grams or more of crack cocaine, when the jury found
> [him] guilty of 50 grams o[r] less[,] were not the produce of
> due process of law and were, in fact[,] unconstitutionally
> determined.

> 6.  Defendant Woods submits that his sentencing attorney
> failed to file a notice of appeal on his behalf against Cline
> (sic) expressed wishes.

The equivocal and inconsistent pleadings of the Petitioner do little to rebut

or diminish the import of his specific instructions that an appeal not be filed

after he had consulted with his attorney.

Simply put, the undersigned is not convinced that an evidentiary

---

[7]      "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  Eleventh Circuit Rule 36-2.

hearing would either further the interests of justice or comport with the considerations of judicial economy.  Indeed, no evidentiary hearing is indicated where, as here, a petitioner's claim is "affirmatively contradicted by the record," is otherwise capable of resolution based on the existing record, or is "patently frivolous" for some other reason.  *See Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983).  Here, it is clear that Woods' contentions are affirmatively denied by the record.  As the United States correctly notes, "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible" do not beget an entitlement to a evidentiary hearing.  *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (internal citations omitted); *see also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir.), *cert. denied*, 534 U.S. 891 (2004).  As such, Woods' request for an evidentiary hearing is hereby **DENIED**.

## III.    Conclusion.

For all the reasons set forth in this Report, the undersigned recommends that Woods' § 2255 petition (Doc. 460), as amended (Doc. 468), be **DENIED**.  In reaching this conclusion, the undersigned considered Woods' amended petition; accordingly, Woods' Motion to Amend (Doc. 468) is hereby **GRANTED**.  Because the meritless nature of Woods' petition is readily apparent to the undersigned without additional

28

expenditure of precious government resources, Woods' Motion to Compel

(Doc. 472) is hereby **DENIED**, as is his request for an evidentiary hearing.

      The instructions that follow the undersigned's signature contain

important information regarding objections to the Report and

Recommendation of the Magistrate Judge.

      **DONE** this 7th day of August, 2009.

                          s/WILLIAM E. CASSADY
                          UNITED STATES MAGISTRATE JUDGE

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

l.      *Objection*.  Any party who objects to this recommendation, or anything in it, must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of

30

Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.


                                        s/WILLIAM E. CASSADY
                                        UNITED STATES MAGISTRATE JUDGE